# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

**RICKY LEE SCOTT, ADC #112513**                                               **PLAINTIFF**

**V.**                         **No. 2:11CV00116 SWW-BD**

**FLETCHER LONG**                                                              **DEFENDANT**


## RECOMMENDED DISPOSITION

**I.     Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright.  Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection.  An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.  A copy will be furnished to the opposing party.

If no objections are filed, Judge Wright can adopt this Recommendation without independently reviewing all of the evidence in the record.  By not objecting, you may also waive any right to appeal questions of fact.

    Mail your objections and "Statement of Necessity" to:

        Clerk, United States District Court
        Eastern District of Arkansas
        600 West Capitol Avenue, Suite A149
        Little Rock, AR 72201-3325

**II.** **Background:**

In March 1996, Ricky Lee Scott was arrested at his home in Cross County, Arkansas, and charged with capital murder for the shooting death of Robert Smith. According to Mr. Scott, while he was detained, the Cross County Sheriff's Department searched his home and confiscated a black and gold L.A. Lakers jersey. They also allegedly confiscated the hiking boots that Mr. Scott was wearing at the time of his arrest. Detectives informed Mr. Scott that, based on eyewitness testimony, they believed that the individual responsible for Mr. Smith's death was wearing an L.A. Lakers jersey on the night of the incident. In addition, Mr. Scott's boots matched the footprints left at the scene.

After Mr. Scott was arraigned, he retained Ronald Wilson to represent him. Shortly thereafter, Mr. Wilson inquired about the evidence that had been confiscated from his client. Apparently, Deputy Prosecuting Attorney Danny Glover informed Mr. Wilson that no such evidence was ever confiscated.

Mr. Scott claims that a few weeks prior to his criminal trial, the Chief Investigator of the Cross County Sheriff's Department informed him that the witness statements of Freda Smith, Dewayne Price, and Kenny Lee Sanders dated March 16, 1996, were forged;

and he provided Mr. Scott with the original witness statements dated March 4, 1996. The next day, Mr. Scott notified his attorney of the alleged forgery and provided the original witness statements to him.

In March 1998, Mr. Scott was tried for capital murder. At the trial, Freda Smith, Dewayne Price, and Kenny Sanders were thoroughly questioned about the two statements that they provided in Mr. Scott's criminal case. They also each testified about the events that took place on the night of Robert Smith's murder.

The jury convicted Mr. Scott of capital murder for the shooting death of Robert Smith. In April 1999, his conviction was affirmed by the Arkansas Supreme Court. Mr. Scott then filed a motion for post-conviction relief which was denied by the trial court in March 2003, and affirmed by the Arkansas Supreme Court in 2005. In December 2005, Mr. Scott's request for federal habeas relief was denied, and that appeal was dismissed by the Eighth Circuit Court of Appeals in July 2006.

In October 2004, while Mr. Scott was pursuing his motion for post-conviction relief, he filed a motion with the trial court to have specific scientific evidence tested under Act 1780 of 2001 (the "Act"). That Act provides:

> Except when direct appeal is available, a person convicted of a crime may commence a proceeding to secure relief by filing a petition in the court in which the conviction was entered to vacate and set aside the judgment and to discharge the petitioner or to resentence the petitioner or grant a new trial or correct the sentence or make other disposition as may be appropriate, if the person claims under penalty of perjury that:

> (1) Scientific evidence not available at trial establishes the petitioner's actual innocence; or
> (2) The scientific predicate for the claim could not have been previously discovered through the exercise of due diligence and the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact-finder would find the petitioner guilty of the underlying offense.

ARK. CODE ANN. § 16-112-201. According to the Act, a motion made within thirty-six months after a conviction is presumed timely. ARK. CODE ANN. § 16-112-202(10). A motion made more than thirty-six months after a conviction is presumed to be untimely. *Id*.

In seeking relief under the Act, Mr. Scott requested that: the written witness statements of Freda Smith, Dewayne Price, and Kenny Sanders be examined by a handwriting expert; the L.A. Lakers jersey taken from his home be tested for gunshot residue; and the hiking boots and bullet casing found at the crime scene be tested "for D.N.A., fingerprints, and ballistics." (#2 at p.14) In July 2005, the trial court denied Mr. Scott's request.[1]

In August 2007, Mr. Scott filed a second motion for scientific testing under the Act. The trial court again denied the request, and Mr. Scott appealed that decision to the Arkansas Supreme Court. On March 6, 2008, the Arkansas Supreme Court dismissed Mr.

---

[1] Mr. Scott claims that, at the hearing in July 2005, Deputy Prosecutor Michael Ladd testified that the bullet introduced into evidence at Mr. Scott's jury trial might be in his attic.

Scott's appeal because he had filed his motion under the Act more than nine years after his conviction. Mr. Scott then filed a motion for reconsideration, which was also denied.

In August 2009, Mr. Scott filed a *pro se* motion for a court order for handwriting samples from Freda Smith, Dewayne Price, Kenny Sanders, and Sargent Curtis Swan of the Wynne Police Department in Cross County Circuit Court. (#2 at pp.29-33) That motion was denied. (#2 at p.34)

In August 2009, Mr. Scott also contacted the Arkansas State Crime Lab ("Crime Lab") to determine whether the L.A. Lakers jersey or his hiking boots were ever submitted for testing. Mr. Scott was notified that the L.A. Lakers jersey was never examined for gunshot residue because the Crime Lab did not possess the technology or equipment necessary to examine clothing, and that the jersey was returned to the Wynne Police Department. (#2 at pp. 36-37) Mr. Scott also obtained an evidence submission form completed by Sargent Swan of the Wynne Police Department. (#2 at pp.38-39) Mr. Scott claims that Sargent Swan's handwriting matches the handwriting on the witness statements at issue.

Mr. Scott then submitted the various witness statement forms and the evidence submission form to Bobbie Reynolds, a scientific handwriting analysis graphologist in Kansas City, Missouri. Ms. Reynolds allegedly concluded that the witnesses statements written on March 4, 1996, and March 16, 1996 were not written and signed by the same person. (#2 at pp.41-54)

On February 3, 2011, Mr. Scott filed a third motion for scientific testing under the Act. The next month, the United States Supreme Court issued its decision in *Skinner v. Switzer*, 131 S.Ct 1289 (2011). In *Skinner*, the Court held that it is proper to bring a post-conviction claim for scientific DNA testing in federal lawsuit under 42 U.S.C. § 1983.

On June 23, 2011, Mr. Scott filed this action under 42 U.S.C. § 1983. He alleges that Prosecuting Attorney Fletcher Long continues to withhold evidence from him. Mr. Scott specifically states that he does not "challenge the prosecutor's conduct or the decisions reached by the Supreme Court of Arkansas in applying Arkansas Act 1780 of 2001 to his motions." (#2 at p.18) Rather, he alleges that his due process rights were violated when he was denied relief under Arkansas's "post-conviction scientific [DNA] statute." (#2 at p.18) He claims that "Arkansas courts have construed the statute to completely foreclose any prisoner who could have sought scientific [DNA] testing prior to trial, but did not, from seeking testing post-conviction." Mr. Scott names Prosecuting Attorney Fletcher Long as a Defendant and seeks only injunctive relief. He asks that Mr. Long be ordered to produce the witness statement of Freda Smith, Dewayne Price, and Kenny Sanders taken on March 4, 1996, his confiscated L.A. Lakers jersey, his hiking boots, one bullet casing, and the blood of Robert Smith collected from the victim's driveway on the date of the incident.

Now pending is Mr. Long's motion to dismiss Mr. Scott's claim. (Docket entry #7) He argues that: Mr. Scott's claims are time-barred; this Court lacks subject matter

jurisdiction over Mr. Scott's claim because he challenges an Arkansas Supreme Court decision; and Mr. Scott has failed to state a federal (constitutional) claim for relief.

Although the Court has determined that Mr. Scott's claims are timely and that this Court has jurisdiction over the claims, Mr. Scott has failed to state a claim for relief under 42 U.S.C. § 1983. Therefore, the Court recommends that Mr. Long's motion to dismiss (#12) be GRANTED.

### III. Discussion:

    A.    Statute of Limitations

In his motion, Mr. Long first argues that Mr. Scott's claims are time-barred. He explains that Mr. Scott received his last ruling from the Arkansas Supreme Court in March 2008. Based on the applicable three-year statute of limitations for § 1983 claims, Mr. Scott had until March 2008 to assert his claims in a federal lawsuit. Because he did not file this lawsuit until June 2011, Mr. Long argues, the claims are untimely and should be dismissed.

Mr. Long correctly states that the statute of limitations for lawsuits brought under 42 U.S.C. § 1983 is three years. *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (applying three-year statute of limitations to § 1983 claim) and *Morton v. City of Little Rock*, 934 F.2d 180, 182 (8th Cir. 1991) (holding that the applicable statute of limitations period for a § 1983 claim in Arkansas is three years). But the critical question is when the statute began to run.

First, Mr. Scott specifically states that he is not appealing any Arkansas Supreme Court ruling. Rather, he complains about the manner in which the Act is being applied. Further, the United States Supreme Court did not issue its decision in *Skinner* until March 7, 2011. Until that date, it was unclear whether Mr. Scott could have pursued his claim in a § 1983 lawsuit. Accordingly, Mr. Scott's cause of action did not accrue until March 2011. Because he filed this lawsuit just over three months later, his claims are timely.

B.      Subject Matter Jurisdiction

Defendant Long also argues that this Court lacks subject matter jurisdiction over Mr. Scott's claims because he is, in reality, appealing an Arkansas Supreme Court decision. He contends that Mr. Scott can only appeal such a decision to the United States Supreme Court. Again, this argument is foreclosed by the United States Supreme Court's decision in *Skinner v. Switzer*, 131 S.Ct. 1289 (2011).

In *Skinner*, a Texas inmate was convicted of capital murder and sentenced to death. He filed a lawsuit under 42 U.S.C. § 1983, alleging that the district attorney's refusal to allow him access to biological evidence for purposes of forensic DNA testing violated his due process rights. The District Court dismissed the lawsuit for failure to state a claim for relief, and the prisoner appealed the decision to the Fifth Circuit Court of Appeals. The Fifth Circuit affirmed the lower court's decision and the inmate appealed to the United States Supreme Court. The Supreme Court granted certiorari and held that

federal courts had subject matter jurisdiction over Mr. Skinner's claim, and the claim was properly brought in a § 1983 lawsuit.

Specifically, with regard to the argument that Mr. Skinner's claims were barred by the so-called *Rooker-Feldman* doctrine, the Court stated that "the narrow ground occupied by the doctrine . . . is confined to . . . cases brought by state-court losers . . . inviting district court review and rejection of [the state court's] judgment." *Skinner*, 131 S.Ct. at 1297 (internal quotations and citations omitted). The Court reasoned that because Mr. Skinner claimed that the Texas post-conviction DNA statute was unconstitutional as "authoritatively construed," instead of challenging the state-court decisions, his claim was not barred by the *Rooker-Feldman* doctrine. *Id*. at 1298. The same reasoning applies here.

In this case, Mr. Scott complains that the Act is unconstitutional as applied. Accordingly, he is not seeking review of a state court decision, and Mr. Scott can bring his claim in federal court.

C.    Failure to State a Claim

Finally, Mr. Long argues that Mr. Scott has failed to state a constitutional claim. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988); *Cook v. City of Bella Villa*, 582 F.3d 840, 848-49 (8th Cir. 2009).

Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807 (1994).

Mr. Scott claims that Mr. Long is denying him access to DNA evidence and that this conduct violates his right to due process under the Fourteenth Amendment. To establish a procedural due process violation, a petitioner must first establish that a protected liberty or property interest is at stake; and second, that the defendant deprived him of that interest, without due process of law. *Schmidt v. Des Moines Public Schools*, 655 F.3d 811, 817 (8th Cir. 2011). Due process is a flexible concept and requires only the procedural protections that a particular situation demands. *Id*. (quoting *Clark v. Kan. City Mo. Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893 (1976)). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Id*. (quoting *Mathews*, 424 U.S. at 333).

A "criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 129 S.Ct. 2308, 2320 (2009). In *Osborne*, a state prisoner brought a § 1983 action claiming that the State's refusal to provide evidence for DNA testing violated his right to due process. *Id*.

at 2314, 2319.  The *Osborne* Court held that there is no freestanding due process right to obtain DNA evidence in the post-conviction setting.  *Id*. at 2322.

In the absence of a free-standing right to DNA evidence, Plaintiff's due-process claim hinges on whether he has a liberty interest created by state law.  See *Id.* at 2319 (finding that an Alaskan statute allowing prisoners to use newly discovered evidence to establish innocence created a liberty interest entitled to due-process protection).  Even where a state has created a post-conviction right to access evidence, a prisoner has only a limited interest in the relief.  *Id*. at 2320.  States have flexibility in deciding what procedures are needed in the context of post-conviction relief.  *Id*.  And federal courts "may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id*.

In *Osborne*, the Court noted that the Alaska statute provided a "right to be released on a sufficiently compelling showing of *new* evidence that establishes innocence." *Id*. (emphasis added).  The statute also provided that the claim could not be brought if the issue could have been raised in a direct appeal of the conviction.  Alaska Stat. §§ 12.72.020(a)(2).  The Court determined that the Alaska procedures were adequate on their face.  *Dist. Attorney's Office v. Osborne*, 129 S.Ct. at 2320.

Similarly, the Arkansas statute at issue provides a person convicted of a crime with the opportunity to commence a proceeding to vacate or set aside a judgment based on *new* evidence that establishes actual innocence.  ARK. CODE ANN. § 16-112-201.  Mr. Scott

availed himself of this process and sought relief under the Act three times. Although his requests for relief were denied, that does not necessarily imply that he was denied due process.

Here, the DNA evidence that Mr. Scott seeks, allegedly to establish his innocence, was available to him prior to trial. Further, Mr. Scott did not pursue a mistaken identity defense at trial. See *Scott v. State*, 355 Ark. 485, 494 (2003). In its opinion affirming Mr. Scott's conviction, the Arkansas Supreme Court noted that "several eyewitnesses identified [Mr. Scott] as the person who shot the boy." *Scott v. State*, 337 Ark. 320, 322 (1999). In light of the testimony at trial, it is not unreasonable for Arkansas courts to conclude, in applying the statute, that Mr. Scott had not established that the DNA evidence he sought would be sufficient to establish by clear and convincing evidence that no reasonable fact-finder would have found him guilty. Mr. Scott has not alleged sufficient facts to state a procedural due process claim.

He explains that in order to seek relief under the Act, the moving party must present a prima facie case that identity was an issue at trial, which Mr. Scott has failed to do. Further, he contends that the testing Mr. Scott requests was available at the time the original trial was held.

Mr. Scott has failed to state a claim for relief under 42 U.S.C. § 1983, but the Court does not find it necessary to determine whether Mr. Scott actually meets the criteria to seek relief under the Act.

Here, Mr. Scott claims that the Act is unconstitutional as applied and that he was denied due process. Other than making this conclusory statement, however, Mr. Scott does not provide any factual basis for his constitutional challenge. He fails to state how he was denied due process. It is clear that he sought relief under the Act three times. Although his requests for relief were denied, that does not necessarily imply that he was denied due process.

In his response to the motion to dismiss, Mr. Scott states that the Act "completely foreclose[s] any prisoner who could have sought DNA (scientific testing) prior to trial, but did not, from seeking testing 'post conviction.'" (#31 at p.2) While Mr. Scott may be correct, such a fact does not necessarily implicate the protection of the due process clause. The United State Supreme Court previously determined that there is no substantive right to DNA evidence. *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 129 S.Ct. 2308, 2321-22 (2009). Accordingly, "it is [Mr. Scott's] burden to demonstrate the inadequacy of the state-law procedures available to him in state postconviction relief." *Id*. at 2322.

Here, Mr. Scott has already exhausted all available avenues to receive post-conviction relief. Because he fails to provide any factual basis to support his contention that he was, in fact, denied procedural due process under the Act, he has failed to state a constitutional claim for relief under 42 U.S.C. § 1983.

## IV.    Conclusion:

The Court recommends that Mr. Long's motion to dismiss (#12) be GRANTED and that Mr. Scott's claims be DISMISSED without prejudice. The pending motion for an evidentiary hearing (#35) should be dismissed, as moot.

DATED this 13th day of December, 2011.

_____
UNITED STATES MAGISTRATE JUDGE